```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION


U.S. Securities and Exchange      )
Commission,                       )
                                  )
          Plaintiff,              )
                                  )
                                  )
     v.                           )  No. 19-cv-5939
                                  )
                                  )
Keith G. Daubenspeck and          )
Geoffrey L. Homer,                )
                                  )
          Defendants.             )
```

Memorandum Opinion and Order

The U.S. Securities and Exchange Commission ("SEC") brought this action against Defendants Keith G. Daubenspeck and Geoffrey L. Homer alleging insider trading in the stock of Ulta Beauty, Inc. ("Ulta"). Homer entered into a bifurcated settlement with the SEC in which he agreed to entry of judgment against him and imposition of a civil penalty pursuant to Section 21A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-1. R. 19. Before me is the SEC's motion for civil penalties. For the reasons that follow, I impose a civil penalty of $83,604.

Pursuant to the terms of the bifurcated settlement, the court accepts as true the allegations in the Complaint. See R. 20 at II(c). A brief discussion of those allegations is warranted.

Daubenspeck and Homer, now in their mid-fifties, have been

close friends since childhood. Daubenspeck worked in the securities industry for most of his career. Homer, in contrast, has spent most his working life in the personnel staffing business, although he did obtain a Series 7 license and work at a brokerage firm early in his life. Over the years, Daubenspeck has provided financial support to Homer several times, even providing Homer with a job on one occasion.

In 2013, Homer began a romantic relationship with a high-ranking Ulta employee who was knowledgeable about Ulta's financial information before it was released to the public. Homer and the Ulta employee enjoyed a close relationship, and as a result, she occasionally entrusted Homer with confidential information about her work.

On two occasions, in August 2015 and March 2016, Homer received nonpublic information from the Ulta employee indicating that Ulta's financial results for the quarter had been positive. On both occasions, Homer relayed that information to Daubenspeck, who purchased shares of Ulta stock before Ulta made its financial information public. When the stock price rose, Daubenspeck sold the shares, realizing a combined profit of $111,472.63. Homer did not receive a direct financial benefit from Daubenspeck's trades, although Daubenspeck did loan Homer $10,000 in April 2016, which Homer has not yet repaid. *See* R. 27-1 ¶ 12.

After the SEC initiated this action, Daubenspeck settled the claims against him, agreeing to disgorge the $111,472.63 in profits plus prejudgment interest and pay an additional civil penalty equal to the amount of disgorgement. *See* R. 11 at II. As noted above, Homer entered into a bifurcated settlement with the SEC in which he agreed to be enjoined from violating the Exchange Act and Rule 10b-5 in the future, as well as be subject to a civil penalty imposed by this court under 15 U.S.C. § 78u-1. *See* R. 20.

15 U.S.C. § 78u-1(a)(2) provides that civil penalties imposed for insider trading "shall not exceed three times the profit gained or loss avoided." The SEC here seeks the maximum penalty of $334,417, three times the profits gained by Daubenspeck. R. 26. Homer asks for a nominal penalty of $1. R. 34 at 3.

Insider trading penalties must "be determined by the court in light of the facts and circumstances." 15 U.S.C. § 78u-1(a)(2). "[T]he overriding concern of the civil penalty against insider trading is to 'effect general deterrence and to make insider trading a money-losing proposition.'" *SEC v. Williky*, 942 F.3d 389, 393 (7th Cir. 2019), *cert. denied sub nom. Williky v. SEC*, No. 19-997, 2020 WL 3038297, at *1 (U.S. June 8, 2020) (citing *SEC v. Rajaratnam*, 918 F.3d 36, 41 (2d Cir. 2019)). A rule providing for a disgorgement remedy alone, in contrast, would likely be an insufficient deterrent because the inside trader could keep her

3

profits if she escaped detection and would need only return them if she did not.

Subordinate to the overarching goal of deterrence, the following factors are "relevant" to imposition of a civil penalty: "[1] the seriousness of the violation; [2] the defendant's scienter; [3] the repeated nature of the violations; [4] whether the defendant has admitted wrongdoing; [5] the losses or risk of losses caused by the conduct; [6] any cooperation provided to enforcement authorities; and [7] ability to pay." *Id.* Courts may also consider "other sanctions already imposed for the same conduct." *SEC v. Michel*, No. 06 C 3166, 2008 WL 516369, at *1 (N.D. Ill. Feb. 22, 2008).

Here, the only sanction already imposed upon Homer is the injunction prohibiting him from future violations of the Exchange Act and Rule 10b-5. R. 20. The SEC has not sought disgorgement from Homer, settling for imposition of a civil penalty alone. To impose only a nominal penalty, then, would allow Homer to escape without financial repercussions. Accordingly, I find that in order to meet the "overriding" goal of deterrence, more than nominal sanctions are appropriate here. *See SEC v. Gowrish*, No. C 09-05883 SI, 2011 WL 2790482, at *10 (N.D. Cal. July 14, 2011) (finding imposed penalties of injunction and "insignificant" disgorgement to "weigh[] heavily in favor of a high civil penalty" in light of deterrence interest).

4

Turning to the appropriate amount of the penalty, I consider the seven *Williky* factors. The first factor weighs in favor of a high penalty because insider trading of this type is doubtless a serious violation of the securities laws. *See SEC v. Berrettini*, 218 F. Supp. 3d 754, 766 (N.D. Ill. 2016) (concluding defendant's conduct "was flagrant" where defendant informed tippee of three of his employer's potential acquisitions). The second factor likewise supports imposition of a high penalty, as the allegations in the complaint support an inference of a high degree of scienter—for example, Homer's March 2016 text message to Daubenspeck: "Ulta earnings call this afternoon for Q4. Might want to own stock." R. 1 ¶ 45.

Further, Homer has not admitted wrongdoing. *See* R. 19. Even following settlement and entry of judgment against him, he argues that "he thought what he conveyed was just the date and time of Ulta's earnings reports." R. 34 at 2. "The criminal who . . . insists that he is innocent . . . demonstrates by his obduracy the likelihood that he will repeat his crime, and this justifies the imposition of a harsher penalty on him." *SEC v. Lipson*, 278 F.3d 656, 664 (7th Cir. 2002). Homer contends that he cooperated with the SEC, but participating in compulsory legal process, such as taking part in discovery and complying with a testimonial subpoena, is not cooperation sufficient to merit a reduction in insider

trading penalties. *See Williky*, 942 F.3d at 394. Accordingly, factors 4 and 6 likewise counsel in favor of a higher penalty.

The remaining factors—factors 3, 5, and 7—are either neutral or support imposition of a lower penalty. Although it is true that Homer's conduct was "repeated" in that he provided Daubenspeck tips on two occasions, there was no protracted pattern of violations of the type that usually justifies imposition of maximum penalties. And although Daubenspeck's profits were undoubtedly substantial, cases in which courts impose maximum penalties often involve higher gains or avoided losses. *See SEC v. Megalli*, 1:13-cv-3783-AT, 2015 WL 13021472, at *5 (N.D. Ga. Dec. 15, 2015) (declining to impose maximum penalty in case involving two securities violations that resulted in gains and avoided losses of $2.7 million and noting that cases where highest penalties are imposed often involve "more protracted or frequent illegal activity" or "larger sums of money at stake"). *Compare S.E.C. v. Rajaratnam*, 822 F. Supp. 2d 432, 434 (S.D.N.Y. 2011), *aff'd*, 918 F.3d 36 (2d Cir. 2019) (imposing maximum penalty in "huge and brazen . . . insider trading scheme, which . . . netted tens of millions of dollars and continued for years"), *with Berrettini*, 218 F. Supp. 3d at 766 (imposing penalty equal to disgorgement amount where tipper had informed tippee of three potential acquisitions and tippee had gained approximately $240,000).

6

Significantly, Homer's personal finances also counsel in favor of a lower penalty. Although he earned income in the range of $70,000 to $100,000 per year over the past three years, he has few assets and significant debt; he estimates his own net worth to be approximately "a negative $55,000." R. 27-1 ¶ 12. A negative or modest net worth weighs against imposition of a high penalty, in part because the deterrent effect of the penalty depends in large part on the defendant's available resources. *Michel*, 2008 WL 516369, at *3; *see also, e.g.*, *SEC v. Svoboda*, 409 F. Supp. 2d 331, 348–49 (S.D.N.Y. 2006) (imposing penalties "considerably less than those requested by the SEC . . . given each defendant's financial condition" and collecting cases); *SEC v. Pardue*, 367 F. Supp. 2d 773, 778 (E.D. Pa. 2005) (imposing $25,000 penalty in light of defendant's negative net worth despite "very serious violation of the securities laws"); *SEC v. Yun*, 148 F. Supp. 2d 1287, 1297–98 (M.D. Fla. 2001) (imposing $100,000 civil penalty despite SEC's request for $807,000 due to defendant's low net worth); *cf. Lipson*, 278 F.3d at 665 (upholding maximum penalty based in part on defendant's "net worth of some $100 million"). Accordingly, a more modest civil penalty is appropriate here given Homer's financial situation.

In light of the foregoing, I impose a civil penalty of 75% of Daubenspeck's profits, or $83,604. This penalty adequately serves

7

the interests of justice and the deterrent purpose behind Section 21A of the Exchange Act.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: June 29, 2020